**STATE of Missouri, Respondent,**

v.

**Jordan L. PRINCE, Appellant.**

**No. SC 96524**

Supreme Court of Missouri, en banc.

Opinion issued December 5, 2017

---

Prince was represented by Craig A. Johnston of the public defender's office in Columbia, (573) 777-9977.

The state was represented by Gregory L. Barnes of the attorney general's office in Jefferson City, (573) 751-3321.

George W. Draper, III, Judge

Following a jury trial, Jordan L. Prince (hereinafter, "Prince") was found guilty of first-degree murder, section 565.020, RSMo 2000,[1] felony abuse of a child, section 568.060, and forcible sodomy, section 566.060. Prince waived jury sentencing. The circuit court sentenced Prince to life imprisonment without the possibility of parole for murder and to consecutive sentences of life imprisonment for felony child abuse and forcible sodomy. Prince appeals.

Prince claims the circuit court abused its discretion in admitting evidence of his juvenile adjudication for lewd and lascivious conduct with a minor and evidence pornographic websites were viewed on his cellular telephone and computer. Prince asserts none of this evidence was logically or legally relevant. This Court finds there was no abuse of discretion in admitting such evidence. The circuit court's judgment is affirmed.

## Factual and Procedural Background

In 2004, Prince was fifteen years old and living in Idaho. Prince was adjudicated for committing lewd and lascivious conduct for manual to genital contact with his six-year-old niece. Prince served three years in a juvenile correctional facility for this offense.

Prince moved to Missouri and began dating Jessica Howell (hereinafter, "Howell"). Howell had an infant daughter (hereinafter, "Victim"). While they dated, Prince and Howell exchanged text messages wherein Howell expressed her desire for Prince to have sex with Victim.

On December 2, 2012, Howell and Victim, aged four-months, spent the night at Prince's home. The following morning at 11:30 a.m., Prince discovered Victim unresponsive on the living room couch. At 12:30 p.m., emergency responders were called. Prince informed the first responders he found Victim face down and not breathing. Prince stated he was the last person to see Victim alive.

Victim was taken from the home to St. Joseph's Hospital and flown to Cardinal Glennon Children's Hospital. She was placed in the pediatric intensive care unit. Victim died at the hospital.

Victim suffered from multiple injuries. Victim was sexually assaulted anally. This

---

1. All further statutory references are to RSMo 2000.

assault caused numerous internal tears, including one internal tear approximately six centimeters in length. These internal tears resulted in Victim losing more than one-third of her blood supply. Victim was subjected to trauma resulting in multiple bruises to her body, including her face, chest, and legs, as well as a cranial laceration. While the internal injuries from the sexual assault inflicted upon Victim would have killed her, the ultimate cause of her death was intentional, sustained strangulation. Prince was arrested and charged with first-degree murder, felony abuse of a child, and forcible sodomy.

During his trial, evidence was admitted demonstrating Prince's cellular telephone and computer were used to view multiple pornographic websites, including information concerning incest. This information had been viewed, searched, or downloaded on Prince's computer up to and including the morning of December 3, 2012. Prince and Howell had multiple text messaging conversations regarding sexual contact with underage girls. Following Victim's death, there were Internet searches on his cellular telephone regarding child autopsies.

A quilt seized from the couch at Prince's home was analyzed because it appeared to have blood or bodily fluid stains on it. After analysis, ten spots of blood were discovered: two of them consistent with Prince's DNA and five consistent with Victim's DNA.

The state admitted part of Prince's Idaho juvenile record through the testimony of the police detective who interrogated Prince. The detective read substantive portions of Prince's juvenile record to the jury, including the allegations of lewd and lascivious conduct with a minor, the criminal statute defining the acts as a felony under Idaho law, and the certified adjudi-

cation showing Prince admitted to committing the acts alleged.

Additionally, the state introduced into evidence videotaped clips of Prince's interrogation. During the interrogation, Prince acknowledged his juvenile record. Prince tried to explain Victim's injuries, claiming she had fallen out of bed and Prince had bounced her too hard on his knee. Prince also stated his hand accidentally might have slipped around Victim's neck while he was bouncing her.

Following trial, the jury returned its verdict, finding Prince guilty of first-degree murder, felony abuse of a child, and forcible sodomy. The jury did not recommend a sentence because Prince waived his right to jury sentencing. Accordingly, the circuit court imposed sentence.

Prince appeals his conviction and sentence. After an opinion by the court of appeals, the case was transferred to this Court. Mo. Const. art. V, sec. 10; Rule 83.02.

## Discussion

Prince raises three points on appeal. Each of his points concerns the admissibility of evidence. The first two points on appeal challenge the admissibility of Prince's juvenile records from Idaho. The third point addresses the admission of pornography found on Prince's computer and cellular telephone.

### Standard of Review

▮ Evidence must be logically and legally relevant to be admissible. *State v. Blurton*, 484 S.W.3d 758, 777 (Mo. banc 2016). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *State v. Collings*, 450 S.W.3d 741, 756 (Mo. banc 2014) (quoting *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010)). Logically relevant evidence is admissible only if it is also

legally relevant. *Anderson*, 306 S.W.3d at 538. "Legal relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* If the prejudice of the logically relevant evidence outweighs its probative value, it should be excluded. *Id.*

Generally, "proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he [or she] is on trial." *State v. Vorhees*, 248 S.W.3d 585, 587 (Mo. banc 2008) (quoting *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954)). However, there are "exceptions under which otherwise inadmissible evidence may be admitted." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). Evidence may be admissible if it tends to establish: "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial." *Id.* Evidence "of uncharged crimes that is part of the circumstances or the sequence of events surrounding the offense charged may be admissible 'to present a complete and coherent picture of the events that transpired.'" *State v. Schneider*, 483 S.W.3d 495, 505 (Mo. App. E.D. 2016) (quoting *Primm*, 347 S.W.3d at 70). Finally, "in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged." Mo. Const. art. I, sec 18(c).

Circuit courts retain wide discretion over issues of relevancy and admissibility of evidence. *Blurton*, 484 S.W.3d at 769. The circuit court's "discretion will not be disturbed unless it is clearly against the logic of the circumstances." *Primm*, 347 S.W.3d at 70 (quoting *State v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009)). On direct appeal, "this Court reviews the [circuit] court 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *State v. Forrest*, 183 S.W.3d 218, 223-24 (Mo. banc 2006) (quoting *State v. Middleton*, 995 S.W.2d 443, 452 (Mo. banc 1999)).

### Admissibility of Juvenile Adjudication— Logical Relevance

Prince claims the circuit court erred in admitting his Idaho juvenile record because it was not logically relevant to this case. Prince asserts his prior conduct was too remote in time, based on a dissimilar act, and technically not a criminal act because his conduct was adjudicated in juvenile court.[2]

---

2. Prince also argues the Idaho juvenile court records were not "evidence" under section 211.271. However, this issue is not preserved for review. In Prince's motion in limine presented to the circuit court, he claimed his Idaho juvenile adjudication was inadmissible pursuant to section 211.271. However, a "motion in limine, in and of itself, preserves nothing for appeal." *Blurton*, 484 S.W.3d at 776

(quoting *State v. Cole*, 71 S.W.3d 163, 175 (Mo. banc 2002)). Prince did not present or preserve any issue regarding section 211.271 in his motion for new trial. "Claims of error for which the appellant did not ... present to the circuit court in a motion for new trial are not preserved for appellate review." *Collings*, 450 S.W.3d at 769. In his brief to the court of appeals, Prince referenced section 211.271

■ Determining whether evidence is logically relevant "is a very low-level test that is easily met." *State v. Sladek*, 835 S.W.2d 308, 314 (Mo. banc 1992) (Thomas, J., concurring). Article I, section 18(c) of the Missouri Constitution endows circuit courts with discretion to admit "relevant evidence of prior criminal acts . . . for the purpose of . . . demonstrating the defendant's propensity to commit the crime with which he or she is presently charged." The circuit court admitted Prince's Idaho juvenile court record regarding Prince's lewd and lascivious conduct with his six-year-old niece.[3]

■ Prince's arguments that his past conduct in Idaho was too remote in time, a dissimilar act, and not a criminal act because it was part of his juvenile record are not persuasive. First, remoteness in time ordinarily affects only the weight of the evidence, and whether it is unduly prejudicial in light of its probative value, which pertains to legal relevance and not logical relevance. *State v. Shaw*, 847 S.W.2d 768, 778 (Mo. banc 1993). The constitutional amendment relaxed/diminished this weight test by stating courts "may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." Article I, section 18(c). The passage of time alone will not render evidence inadmissible due to its remoteness. *State v. Peal*, 393 S.W.3d 621, 628-29 (Mo. App. W.D. 2013).

Second, Prince argues these crimes were not similar because his prior acts involved his six-year-old niece[4] while the offense here was against a four-month-old infant. Victim was not related biologically to Prince, but he referred to her as his daughter. Prince's actions in both cases were against young females. Prince had access to his victims due to their close family-like relationship with him. These crimes were similar enough to be logically relevant.

Finally, Prince asserts his prior conduct was not a "prior criminal act" because it was a "delinquent act" committed when he was a juvenile. Prince's acts, whether classified as criminal or delinquent, were criminal acts with legal consequences. *See State v. Doss*, 394 S.W.3d 486, 496-97 (Mo. App. W.D. 2013) (finding juvenile records prior to the constitutional amendment inadmissible but recognizing the records indicate the defendant engaged in criminal behavior). Article I, section 18(c) allows admission of "evidence of prior criminal acts, whether charged or uncharged...." Accordingly, it is Prince's actual conduct, rather than the classification of his conduct, that is key.

Prince's arguments could impact the determination as to the evidence's legal relevance but not its logical relevance. *See Shaw*, 847 S.W.2d at 778. The circuit court did not abuse its discretion in finding Prince's juvenile adjudication logically relevant.

only once to compare the statutory language that children should not be termed "criminals" due to any juvenile court adjudication. Here, Prince presents the argument his juvenile adjudication was not "evidence." Rule 83.08(b) provides when a party files a substitute brief in this Court, the substitute brief "shall not alter the basis of any claim that was raised in the court of appeals brief." Because Prince altered the basis of his claim with respect to this argument, it is not pre-

served for review. *See, e.g., J.A.R. v. D.G.R.*, 426 S.W.3d 624, 629-30 (Mo. banc 2014).

3. Prince had at least one other juvenile adjudication from Idaho that was not admitted.

4. Prince argues this crime was against a cousin, but the record reflects his sister was the mother of the six-year-old victim. Accordingly, the victim is Prince's niece.

*Admissibility of Juvenile Adjudication—
Legal Relevance*

■ Prince argues the circuit court abused its discretion in admitting his prior juvenile adjudication because it was not legally relevant. Prince asserts his prior juvenile adjudication was too remote in time to be relevant. He also asserts the acts of his prior juvenile adjudication were too dissimilar to this case to be relevant.

■ This Court has not addressed whether the admission of evidence of criminal acts that occurred nine years prior to the conduct at issue is too remote in time to be legally relevant. In other jurisdictions wherein the admission of prior adjudications of sexual offenses against minors is admissible to demonstrate propensity evidence in sexual offense cases, there is guidance regarding admission of prior conduct. "Remoteness is not subject to a rigid rule, but will depend on the facts of the case." *State v. Armstrong,* 793 N.W.2d 6, 12 (S.D. 2010). "Remoteness and similarity must be considered together because the two concepts are so closely related." *Fisher v. State,* 641 N.E.2d 105, 109 (Ind. Ct. App. 1994). *See also State v. Most,* 815 N.W.2d 560, 565 (S.D. 2012); *State v. McGuire,* 135 Idaho 535, 20 P.3d 719, 723 (Idaho Ct. App. 2001). Remoteness in time may render evidence inadmissible when the prejudicial effect outweighs the probative value. *Shaw,* 847 S.W.2d at 778.

Other jurisdictions make clear that when the conduct in question is similar, a nine-year gap in time is not too remote to preclude admissibility. *See United States v. Emmert,* 825 F.3d 906, 909 (8th Cir. 2016), *cert. denied,* —— U.S. ——, 137 S.Ct. 1349, 197 L.Ed. 2d 535 (2017) (admitting offense from up to twenty years prior to conduct at issue); *United States v. LeMay,* 260 F.3d 1018, 1029-30 (9th Cir. 2001) (finding prior conduct committed eleven years earlier when the defendant was twelve years

old admissible); *United States v. Meacham,* 115 F.3d 1488, 1494-95 (10th Cir. 1997) (finding prior sexual conduct thirty years earlier was not too remote); *State v. Antonaras,* 137 Conn.App. 703, 49 A.3d 783, 792 (2012) (admitting crimes from nine to twelve years prior); *McGuire,* 20 P.3d at 723 (admitting evidence of crimes from twenty-three years prior); *Smith v. State,* 745 So.2d 284, 289 (Ala. Crim. App. 1998) (finding the time interval of fourteen and eighteen years not too remote to be inadmissible).

■ Prior acts of child molestation are relevant when the acts were "committed in a manner similar to the charged offense." *Emmert,* 825 F.3d at 909 (quoting *United States v. Rodriguez,* 581 F.3d 775, 796 (8th Cir. 2009)). "It is well established that the victim and the conduct at issue need only be similar—not identical—to sustain the admission of uncharged misconduct evidence." *State v. Acosta,* 326 Conn. 405, 164 A.3d 672, 675-78 (2017) (quoting *State v. George A.,* 308 Conn. 274, 63 A.3d 918, 932 n.24 (2013)).

Prince's prior Idaho adjudication involved lewd and lascivious acts with a young, female family member. Prince admitted he committed manual to genital contact with his niece with the intent to appeal to sexual desire. Prince's conduct was felonious and, while he only spent three years in juvenile detention, he statutorily could have received a life sentence.

Here, Prince's conduct was directed against another young female. While Victim was not related biologically to Prince, he referred to her as his daughter. Prince's Idaho adjudication was similar to Missouri's sodomy statutes. *See* section 566.062 (statutory sodomy); section 566.010(1) (deviate sexual intercourse); section 566.060.1 (first-degree sodomy). Given the similarity in nature of Prince's

actions toward his young victims and the fact he was deprived of access to young children for the three years he was in a juvenile corrections facility, the Idaho adjudication was not too remote in time nor too dissimilar to be irrelevant. Prince's actions, while not identical, were similar enough in nature to be legally relevant.

If the prejudice of the evidence outweighs its probative value, it should be excluded. *Anderson*, 306 S.W.3d at 538. Article I, section 18(c) provides, "The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." The plain language indicates the circuit court retains substantial discretion in admitting or excluding this evidence even if there is a danger of some prejudice. While the admission of Prince's juvenile adjudication may have been prejudicial to his defense, its probative value was not *substantially* outweighed by the danger of unfair prejudice.

The state did not elicit inflammatory testimony about the prior adjudication but, rather, presented the official adjudication record. *See United States v. Kelly*, 510 F.3d 433, 438 (4th Cir. 2007) (finding admission of official conviction record and no inflammatory testimony to not be unfairly prejudicial). Additionally, there was significant other evidence supporting Prince's conviction. Prince admitted he was the only person with access to Victim at the time of her death. Prince's blood, along with Victim's blood, was discovered on the blanket she was on at the time of her death. The circuit court did not abuse its discretion in admitting Prince's prior adjudication.

*Admission of Pornographic Evidence*

■ Prince claims the circuit court erred in admitting the pornographic infor-

mation gathered from his cellular telephone and computer. Prince asserts this evidence was improper because it was meant to demonstrate he had a "bad character."

The state admitted evidence that, in the week before Victim's murder, Prince's cellular telephone was used to view a large number of pornography-related websites, including the morning Victim was killed. The state also admitted evidence of text conversations between Prince and Howell. In these conversations, Prince referred to himself as "daddy." Prince and Howell also texted about Howell's desire for Prince to have "sex with our daughter." Prince did not agree to Howell's suggestion, but they continued to exchange messages regarding potential illegal acts regarding underage sexual contact.

There was also evidence found on Prince's computer of inactive peer-to-peer file-sharing programs. The state explained these downloaded videos were no longer accessible and were deleted prior to Victim's birth, but the files appeared to be related to pedophilia and incest. After Victim's birth, there was evidence Prince's computer had accessed multiple sites dedicated to incest.

The state did not seek to admit this evidence to show Prince's "bad character." Rather, the state sought to admit this information to provide meaning and context to the circumstances surrounding Victim's murder. This evidence also demonstrated that, in the intervening time between his juvenile adjudication and this case, Prince continued to be motivated sexually by incest and young girls. Further, the state's evidence demonstrated the absence of mistake or accident because, in his police interviews, Prince claimed Victim's rectal injury and strangulation were accidental. *Primm*, 347 S.W.3d at 70.

Prince does not present a clear argument of how admission of this evidence

prejudiced him. Prince merely claims the admission of this evidence could have inflamed the jury. Any prejudice arising from the description of the pornographic material was not due to the state's presentation of the evidence discovered on Prince's cellular telephone and computer but rather from the offensive content of the material found. *State v. Davis*, 318 S.W.3d 618, 640 (Mo. banc 2010).

There was significant other evidence supporting Prince's conviction. The jury knew he had been in a juvenile corrections facility for sexual contact with a young, female family member. Prince admitted he was the last person to see Victim alive, and he excluded all other potential suspects in his police statement. Prince was not prejudiced by the admission of this evidence because there was not a reasonable probability it affected the outcome of his trial. *State v. Taylor*, 298 S.W.3d 482, 491 (Mo. banc 2009). The circuit court did not abuse its discretion in admitting this evidence.

### Conclusion

The circuit court's judgment is affirmed.

All concur.