

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | **WD81930** |
| v. | ) | |
| | ) | |
| | ) | **OPINION FILED:** |
| | ) | **November 12, 2019** |
| ROBERT ALLEN TAYLOR, | ) | |
| | ) | |
| Appellant. | ) | |

### Appeal from the Circuit Court of Cole County, Missouri
### The Honorable Patricia S. Joyce, Judge

**Before Division One:** Edward R. Ardini, Jr., Presiding Judge, and
Mark D. Pfeiffer and Cynthia L. Martin, Judges

Mr. Robert A. Taylor ("Taylor") appeals from the judgment entered by the Circuit Court of Cole County, Missouri ("trial court"), following a jury trial in which he was found guilty of enticement of a child, § 566.151;[1] sodomy in the second degree, § 566.061; and rape in the second degree, § 566.031. The trial court found Taylor to be a prior and persistent offender and sentenced him to fifteen years' imprisonment on the enticement count, fifteen years' imprisonment on the sodomy charge to run concurrent to the enticement sentence, and fifteen years' imprisonment on the rape charge to run consecutive with the enticement and sodomy

---

[1] All statutory references are to the REVISED STATUTES OF MISSOURI 2000, as updated through the 2014 Noncumulative Supplement, unless otherwise indicated.

sentences, for a total of thirty years' imprisonment. We affirm Taylor's convictions. We reverse Taylor's sentence as a prior and persistent offender and remand for resentencing.

**Facts and Procedural History**[2]

A.C. ("Victim")[3] was born on July 6, 2000, in Chicago, Illinois. Under the joint custody agreement between Victim's mother ("Mother") and her biological father ("Father"), Victim lived with Mother and Father had visitation. When Victim was ten years old and living in Chicago with Mother, her two siblings, and Taylor (Mother's boyfriend), Taylor starting sexually abusing Victim by inappropriately touching her buttocks and "private parts," which included her vaginal area and breasts. Victim did not tell anyone because Taylor threatened to tell her family or to harm them. When she was thirteen, Taylor forced her to perform oral sex; and when she was fourteen, Taylor started having sexual intercourse with her.

Mother, Taylor, Victim, and Victim's siblings moved from Chicago to Jefferson City, Missouri, in July 2014. After moving to Jefferson City, Taylor's sexual contact with Victim continued. Once, Taylor made Victim perform oral sex on him in exchange for allowing her to go to a movie with a friend. On another occasion, when Victim was taking a bath, Taylor came into the bathroom naked, got in the tub, and inserted his penis into her vagina.

In June 2015, Taylor initiated numerous sexually explicit text messages with Victim in which she agreed to his sexual entreaties in exchange for Taylor purchasing Victim a new phone.

In July 2015, Victim visited Father in Chicago. At one point during the visit, Father saw a picture on Victim's cell phone that made him angry and upset. When he asked about the

---

[2] "On appeal from a jury-tried case, we review the facts in the light most favorable to the jury's verdict." *State v. Hudson*, 574 S.W.3d 796, 799 n.1 (Mo. App. W.D. 2019) (internal quotation marks omitted).

[3] Pursuant to section 595.226.1 RSMo 2016, we have used the term "Victim" to protect the identity of the victim of an offense under Chapter 566.

2

picture, Victim lunged at Father, demanding, "You need to give me the phone. Give me the phone."

Soon thereafter, Victim called Mother and told her that she was uncomfortable and wanted Mother to come and get her, so Mother and Taylor drove to Chicago to retrieve Victim and return to Jefferson City. Upon picking her up, Victim told Mother that she left her purse, her money, and her phone behind, and she wanted to go back to get them. Mother refused. Taylor also asked Mother to go back and get Victim's phone, but Mother refused. When Father found Victim's purse and cell phone, he read the sexually explicit text messages between Taylor and Victim and contacted the police.

During the evening of July 27, 2015, a member of Mother's family called her at work and told her that something happened to Victim and that she needed to get home. When Mother left work, Taylor was in Mother's employer's parking lot. He told her that her family was accusing him of "doing something bad" to Victim. When Mother arrived home, police were at the home. Victim confirmed to the police that Taylor had sent her sexually explicit text messages and pictures. Police extracted the text messages from the phone, reviewed the data, and located several text messages between Taylor and Victim that appeared to be sexual in nature. Victim confirmed to police that the text messages were about sexual contact.

During the investigation, Taylor fled to Chicago, where he was taken into custody in October 2015. Upon his return to Jefferson City, he was interviewed by the detective assigned to the case. Taylor denied committing the crimes and claimed that Father framed him by creating the text messages.

The State charged Taylor as a prior and persistent offender with one count of the felony of enticement of a child, alleging that on June 18, 2015, Taylor "persuaded and solicited and

3

coaxed and enticed" Victim by sending text messages requesting sexual contact for the purpose of engaging in sexual conduct with her; one count of sodomy in the first degree, alleging that between July 6, 2014, and July 6, 2015, Taylor, for the purpose of arousing or gratifying his sexual desire, knowingly had deviate sexual intercourse with Victim by the use of forcible compulsion; and one count of rape in the first degree, alleging that between July 6, 2014, and July 6, 2015, Taylor knowingly had sexual intercourse with Victim by the use of forcible compulsion.

At a pre-trial hearing, the State presented records of Taylor's prior convictions. Taylor objected on the grounds that the records were not certified by the chief judge or presiding associate judge that they were in due form as required by section 490.130. The trial court overruled the objection and found Taylor was a prior and persistent offender. Taylor called two witnesses at trial to support his defense that Father fabricated evidence and manipulated Victim to lie.

The jury found Taylor guilty of enticement of a child, of the amended charge of sodomy in the second degree, and of the amended charge of rape in the second degree. The trial court sentenced Taylor to fifteen years' imprisonment on the enticement count, fifteen years' imprisonment on the sodomy charge to run concurrent to the enticement sentence, and fifteen years' imprisonment on the rape charge to run consecutive with the enticement and sodomy sentences, for a total of thirty years' imprisonment.

Taylor timely appealed.

**Point III – Exclusion of Evidence**

In Taylor's third point, which we will address first, he asserts that the trial court abused its discretion in excluding evidence that Father was physically abusive to Victim and Mother.

4

Taylor argues that the testimony of Victim, Mother, and a police detective was relevant to show that Victim was controlled by and frightened of Father, and therefore, she may have been manipulated to fabricate the allegations against Taylor because Father did not like him.

**Standard of Review**

"It is well-settled that 'the interest or bias of a witness and his relation to or feeling toward a party are never irrelevant matters.'" *State v. Lawrence*, 569 S.W.3d 545, 552 (Mo. App. S.D. 2019) (quoting *Mitchell v. Kardesch*, 313 S.W.3d 667, 676 (Mo. banc 2010)). "'It has long been recognized that defendants in rape or sexual assault cases should be allowed to introduce evidence that the prosecuting witness's story is a fabrication.'" *Id*. (quoting *State v. J.L.S.*, 259 S.W.3d 39, 45 (Mo. App. W.D. 2008)). "While bias is always relevant, the scope of the evidence used to show bias is within the broad discretion of the trial court." *Id*. (citing *State v. Bounds*, 857 S.W.2d 474, 476 (Mo. App. E.D. 1993)).

"Our standard of review in addressing the admission or exclusion of evidence at trial is for abuse of discretion." *State v. Ellis*, 512 S.W.3d 816, 825 (Mo. App. W.D. 2016). A trial court abuses its discretion "when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id*. (internal quotation marks omitted). If we find an abuse of discretion, "our role on direct appeal is to review for prejudice, not mere error, and [we] will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id*. (internal quotation marks omitted).

"Our review to determine prejudice varies depending upon whether evidentiary error involves the admission or the exclusion of evidence in a criminal trial." *Id.* Because a defendant in a criminal case has a constitutional right to present a complete defense, "the erroneous exclusion of evidence in a criminal case creates a rebuttable presumption of prejudice." *Id.*

(internal quotation marks omitted). "The [S]tate may rebut this presumption [of prejudice] by proving that the error was harmless beyond a reasonable doubt." *Id*. (internal quotation marks omitted). "In assessing whether the exclusion of evidence was harmless beyond a reasonable doubt, the facts and circumstances of the particular case must be examined, including the nature of the charge, the evidence presented, and the role the excluded evidence would have played in the defense's theory." *Id*. (internal quotation marks omitted). "The exclusion of evidence is harmless beyond a reasonable doubt where the excluded evidence is cumulative of other evidence which was admitted at trial." *Id*. (internal quotation marks omitted).

Here, we conclude that the trial court's exclusion of evidence was neither an abuse of discretion nor, in any event, was any such exclusion of evidence prejudicial to Taylor.

### Analysis

Prior to trial, Taylor filed a motion seeking the trial court to permit evidence that Father was physically abusive to Victim and Mother. The trial court denied Taylor's motion. At trial, Taylor made offers of proof, as follows:

Mother testified that Father was controlling and physically abusive with Victim and Mother. Mother obtained a restraining order against Father in 2015, and neither she nor Victim talked to him until he got a visitation order for Victim's visit in 2015. When Mother was questioned about Father's alleged abuse of Victim when Victim was in elementary school, she responded, "I don't recall, but I think it was in, like, 2013 or something like that, 2013." As to Father's alleged physical abuse of Victim in 2015, Mother testified that it was one event *after* all of the charged crimes had occurred.

The detective who investigated this case testified that Mother stated that Father was controlling and abusive to her and Victim. He also stated that Victim talked about Father

6

abusing her, and "[s]he had stated something to that effect between them" but he could not remember any specifics.

Victim testified that Father was physically abusive to her, though the abuse events she testified to happened *after* Father found the messages on her cell phone and *after* she spoke with the police.

"Evidence must be logically and legally relevant to be admissible." *State v. Prince*, 534 S.W.3d 813, 817 (Mo. banc 2017). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (internal quotation marks omitted). "Logically relevant evidence is admissible only if it is also legally relevant." *Id.* at 817-18. "Legal relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* at 818 (internal quotation marks omitted). "If the prejudice of the logically relevant evidence outweighs its probative value, it should be excluded." *Id.*

Taylor argues that given his theory of defense—that Father was controlling and had manipulated Victim to lie and fabricate evidence—Victim's and Mother's testimony that Father had been violent with them would have bolstered Taylor's defense theory. Taylor further argues that Victim's and Mother's testimony about Father's physical abuse was logically and legally relevant to show Victim's bias against Taylor.

"Determining whether evidence is logically relevant is a very low-level test that is easily met." *Prince*, 534 S.W.3d at 819 (internal quotation marks omitted). As a general proposition, witness credibility is always a logically relevant issue. *State v. Contreras-Cornejo*, 526 S.W.3d 146, 155 (Mo. App. W.D. 2017). Such testimony may, however, be limited by the court in its discretion if such testimony is more prejudicial than probative. *Id.*

With respect to legal relevance, the probative value of the testimony presented in the offers of proof does not outweigh its prejudicial effect in confusing the issues and misleading the jury. Mother testified as to the dates of two allegedly abusive events perpetrated by Father—one in "something like" 2013, and one event in 2015. Victim testified that all of the things to which she testified in her offer of proof happened after Father found the messages on her cell phone and after she spoke with the police. The unspecified event in 2013 was two years before Victim reported abuse by Taylor, and the unspecified event in 2015 was after all of the charged crimes had occurred. Taylor fails to show that either unspecified event of alleged abuse by Father had any impact on Victim reporting the crimes perpetrated by Taylor. Likewise, Taylor failed to show that either unspecified event of alleged abuse by Father proved the Victim was biased against Taylor and fabricated her report of his abuse. Taylor does not explain how the testimony of Mother and of the detective who investigated this case that Father was controlling and abusive to Mother is relevant to Victim's bias against Taylor in that there was no evidence that Victim knew about such abuse. Thus, Taylor failed to prove that the evidence of alleged abuse by Father was logically or legally relevant to prove Victim's bias against Taylor; accordingly, the trial court did not abuse its discretion in refusing the admission of such evidence.

Further, even were we to conclude that the trial court's exclusion of the evidence was error, which we do not, we note that the excluded evidence of Victim's fear of Father was cumulative of other evidence which was admitted at trial.[4] Hence, any complained-of error was, at best, harmless error.

---

[4] For example, Mother was permitted to testify at trial that she had a tense relationship with Father and that she was afraid of him; that Victim had told Mother she was "uncomfortable" with Father when Victim was with him in Chicago and that's why she had to drive to Chicago to pick Victim up; that Father was very controlling and did not like Taylor; that when Victim was in Chicago and called Mother, it sounded like Father was "coaching" Victim on what to say; and, that Mother felt like Father was using this case as evidence against her to obtain custody of Victim. Likewise, Victim was permitted to testify at trial that she did not "feel safe" around Father; that Father tried

8

Point III is denied.

## Points I and II – Evidence of Prior Convictions

In Points I and II, Taylor asserts that the trial court erred when it found him to be a prior and persistent offender based on his prior felony convictions in Illinois and in sentencing him in accordance with that finding because the records of his Illinois convictions were not admitted into evidence (Point I) and were not certified by the judge, chief justice, or presiding associate circuit judge that the records had been attested to in due form (Point II). The State concedes, and we agree, that Point II is dispositive of Taylor's claims because the records do not contain the certification of a judge as required by section 490.130.

The State charged Taylor as a prior and persistent offender, alleging that on May 10, 2004, in the Circuit Court of Cook County, Illinois, he was found guilty of aggravated possession of a stolen motor vehicle and of the felony of robbery. At a pre-trial hearing, the State presented records of Taylor's prior convictions as State's Exhibits 20 and 21. Taylor objected on the grounds that the records were not certified by the chief judge or presiding associate judge that the records were in due form as required by section 490.130. The prosecutor argued that the signature of the judge on the conviction record satisfied the statutory requirement. The trial court overruled the objection and found Taylor was a prior and persistent offender.

Section 490.130 governs the admissibility of out-of-state court records and provides in pertinent part that:

> The records of judicial proceedings of any court . . . of any state, attested by the clerk thereof, with the seal of the court annexed, if there be a seal, and certified by the judge, chief justice or presiding associate circuit judge of the court to be attested in due form, shall have such faith and credit given to them in this state as they would have at the place whence the said records come.

to get Victim to say that she did not want to be with Mother and to otherwise lie about Mother; and, that Father had tried multiple times to take her phone.

9

"[U]nder section 490.130, records of judicial proceedings from any state are given full 'faith and credit' in this state and are therefore admissible if they are: (1) attested by the clerk of the court; (2) bear the seal of the court annexed; and (3) are certified by a judge of the court as 'attested in due form.'" *State v. Libertus*, 496 S.W.3d 623, 632 (Mo. App. W.D. 2016). "When prior convictions are the basis for enhanced punishment . . . , the [S]tate must prove the fact of prior convictions and do so in conformity with applicable statutory requirements for such proof." *Id.* at 631 (internal quotation marks omitted). *See also State v. Young*, 366 S.W.2d 386, 388 (Mo. 1963) (finding that exhibit did not meet the minimum requirements of section 490.130 to be admissible into evidence in that it was not "certified by the judge . . . to be attested in due form"); *State v. Lawshea*, 798 S.W.2d 198, 200 (Mo. App. E.D. 1990) ("A record of conviction from another state is not admissible without the required certification by the judge.").

In *State v. Monroe*, 18 S.W.3d 455 (Mo. App. S.D. 2000), the defendant challenged the sufficiency of the evidence to support the trial court's finding that he was a persistent driving-while-intoxicated ("DWI") offender. *Id.* at 458. He complained that two exhibits alleged to be evidence of two municipal DWI convictions from Arkansas were inadmissible and not entitled to full faith and credit because they did not comply with the requirements of section 490.130 in that the exhibits lacked a certification by the judge that the clerk's attestation was in due form. *Id.* at 458-59. The court found that because the exhibits lacked the municipal judge's certification as required by section 490.130, "the trial court erred in admitting [the exhibits] and relying on them as competent evidence of Defendant's status as a persistent offender." *Id.* at 459. *See also State v. Cullen*, 39 S.W.3d 899, 906 (Mo. App. E.D. 2001) ("Prior convictions are the basis for enhanced punishment or procedural differences, and the

State is required not only to prove the fact of prior convictions, but to do so in conformity with applicable statutory requirements." (citing *Monroe*, 18 S.W.3d at 458)).

Likewise, in *State v. Dismang*, 151 S.W.3d 155 (Mo. App. S.D. 2004), the court found that while one of the State's exhibits bore a certification of the court clerk on each page, including the three pages pertaining to the "Judgment of Conviction and Sentence" of the defendant for five felonies, nevertheless, the exhibit lacked certification by a judge that the copies had been attested by the clerk in due form in compliance with section 490.130. *Id*. at 161. Accordingly, the court held that the exhibit did not meet the requirements of section 490.130, and the trial court should not have accorded it full faith and credit as evidence of the defendant's prior felony convictions. *Id*. (citing *Monroe*, 18 S.W.3d at 458). The court concluded that the trial court "erred by admitting, over timely objection, [the exhibit] which had not been properly authenticated." *Id*.[5]

Here, State's Exhibits 20 (certified statement of Taylor's conviction of unlawful possession) and 21 (certified statement of Taylor's conviction of robbery) each contain an attestation ("I hereby certify that the foregoing has been entered of record on the above captioned case. Date 4/24/18.") signed by Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois. Each record also contains the seal of the Circuit Court of Cook County, Illinois. However, each record lacks the certification of the judge, chief justice, or presiding associate circuit judge of the court that the attestation was in "due form." Consequently, these records did not comply with the requirements of section 490.130, and the trial court erred in relying on them as competent evidence of Taylor's status as a prior and persistent offender. *See State v. Martinez*, 407 S.W.3d 669, 673 (Mo. App. S.D. 2013) ("A court commits reversible error if,

---

[5] However, the court held that this error was not prejudicial because another exhibit setting forth defendant's prior criminal history of five felony convictions was properly certified in accordance with section 490.220. *State v. Dismang*, 151 S.W.3d 155, 161 (Mo. App. S.D. 2004).

11

despite timely objection, it admits documentary evidence of the accused's convictions that does not meet the minimum requirements of section 490.130." (citing *State v. Young*, 366 S.W.2d 386, 388 (Mo. 1963))). Because the record contains no other evidence of Taylor's prior convictions, the trial court's adjudication that he was a prior and persistent offender was erroneous.

Point II is granted.[6]

## Conclusion

We affirm Taylor's convictions. We reverse Taylor's sentence as a prior and persistent offender and remand the case for resentencing.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Judge

Edward R. Ardini, Jr., Presiding Judge, and Cynthia L. Martin, Judge, concur.

---

[6] Because Point II is dispositive of Taylor's claims regarding the trial court's prior and persistent offender finding, we need not and do not address Point I.