

# Missouri Court of Appeals

## Southern District

### In Division

STATE OF MISSOURI,     )
    )
    Respondent,     )
    )  No. SD37917
vs.     )
    )  FILED: May 20, 2024
JONATHAN G. NEWTON,     )
    )
    Appellant.     )

### APPEAL FROM THE CIRCUIT COURT OF HOWELL COUNTY

### Honorable Steven F. Lynxwiler

### **AFFIRMED**

A jury found Jonathan G. Newton ("Defendant") guilty of three counts of statutory sodomy in the first degree, *see* section 566.062,[1] and received consecutive sentences of 20 years on each count. In two points on appeal, Defendant contends the trial court (1) abused its discretion by excluding Victim's mother's ("Mother") testimony that Victim's grandmother ("Grandmother") made previous false allegations of sexual abuse against other family members; and (2) abused its discretion by failing to grant a mistrial when Kristen Barr, an investigator for

---

[1] All statutory references are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017. Defendant was charged by indictment of committing statutory sodomy in the first degree by engaging in deviate sexual intercourse with Victim, who was less than 12 years old, by 1) having Victim place his mouth on Defendant's penis when Victim wanted a Coke; 2) placing Defendant's tongue inside Victim's anus; and 3) placing Defendant's penis in Victim's mouth and at the same time placing Victim's penis in Defendant's mouth.

the Children's Division, ("Investigator"), testified Defendant had refused to take a polygraph test. Finding no merit in Defendant's points, we affirm the trial court's judgment.

## Factual Background

Defendant married Mother when Victim was "six or seven" years old. On September 2, 2017, an incident occurred at a McDonald's play area when Victim stated to another boy, "I am the king of penises." The boy's mother was very upset with Victim and reported the comment to Victim's aunt ("Aunt") and Grandmother who were both at McDonald's with Victim. When Aunt tried to explain to Victim that a statement like that was not proper, Victim disclosed to her that Defendant "makes me suck his private part."

Aunt left McDonald's with Victim and dropped him off at her house. She then drove to Mother's house and reported to Mother what Victim had said to Aunt. Mother spoke to Victim at Aunt's house and decided to take Victim to the sheriff's department. While at the sheriff's department, Investigator interviewed Victim.

At the Child Advocacy Center a few days later, Tina Miller, a forensic interviewer ("Interviewer") interviewed Victim, and Celeste Williams, a nurse practitioner ("Nurse"), performed a physical examination called a SAFE exam.

The matter proceeded to a jury trial. The State called Victim, Mother, Investigator, Interviewer, and Nurse. Victim was 13 years old at the time of the jury trial. Victim testified that when he was "seven or eight" years old Defendant made him suck on Defendant's penis and "it happened many times." Victim further testified regarding several other very graphic incidents with Defendant.

The video recordings of Victim's forensic interviews were admitted into evidence at trial and played for the jury. In those recordings, Victim described the sexual contact with Defendant.

2

Mother testified regarding her marriage to Defendant and how Defendant would babysit Victim while she was at work. She also testified regarding the night of the McDonald's incident and the statements made by Victim. On cross-examination, defense counsel asked whether Grandmother accused other men in the family of sexually abusing her grandchildren. After the State objected based on relevance, defense counsel made an offer of proof in which Mother testified Grandmother accused other men in the family of being sexually inappropriate with her grandchildren. These accusations included when Grandmother accused her son-in-law of being inappropriate with his daughter when she was sitting on his lap and he was driving her around in his wheelchair. Grandmother had also been concerned about her son inappropriately touching his three or four-year-old son. However, in response to this inquiry Mother testified, "I believe it was still when I lived at home before I had [Victim]. It was whenever—he had, like, a tick on his penis, and my mom--honestly, I want to say that she was intoxicated and had said something about my brother being inappropriate."

Mother further testified that when she was 16, Grandmother had made her go to a police station and report things that she now considers "very inappropriate" with a 28-year-old man, even though they did not have sexual intercourse. Grandmother had also accused Grandmother's former husband of having a relationship with a 16-year-old. Mother testified that none of Grandmother's allegations concerned a male placing another male's penis in that male's mouth, a person licking another person's anus, or two males each having the other person's penis in their mouth at the same time.

Defense counsel asked, "There's a good chance that . . . maybe [Victim] has heard people talking about some of these incidents?" and Mother replied, "I doubt it, but maybe." Defense counsel asked, "[I]t's a possibility that [Victim] has heard some talk in the family about these

3

types of things?" and Mother replied, "Possible." She testified that the incidents were talked about within the family "not often" and "very rarely." Mother testified that "[t]he kids may not even know that [Grandmother] said this about them, honestly" and that "[Mother didn't] even know if they know that [Grandmother] had said these things." Mother testified that she brought up Grandmother's allegations once with Defendant toward the end of 2015 and that it was "possible" that Victim was in the same room or the next room at the time, but that "[she] tried not to talk about things like that in front of [Victim]." Mother testified that as far as she knew, Victim did not know anything about Grandmother's allegations. After the State argued that Grandmother's allegations were "not even close to being identical" to Victim's allegations against Defendant, the trial court sustained the State's objection.

The State also called Investigator who testified Victim immediately stated to her that Mother "had married a horrible person that liked to touch privates." Victim told her in detail about many acts by Defendant of a sexual nature. Defense counsel asked Investigator whether she recalled Mother's texts to her relating a belief the police might not prosecute Defendant because "there wasn't enough evidence." Investigator responded, "So [Mother] talked about things [a police investigator] had said about polygraphs and stuff." Investigator testified she told Mother she would get an update from the officer. Defense counsel then asked, "Okay. And after you talked to [the police investigator], it sounds like he was going to kick out a probable cause statement and send it to the prosecutor?" Investigator answered, "Yes, that [Defendant] wouldn't do the polygraph and that there would be a probable cause statement sent to the prosecuting attorney." The following exchange then occurred between defense counsel, the State, and the trial court:

4

| | |
|---|---|
| Defense Counsel: | I'm not really sure at this point what to do. It's already kind of out there in front of the jury, but we've heard about a polygraph twice now. |
| State: | Well, at this time I think they're stuck with their question and her answer. |
| Trial Court: | I do too. |
| Defense Counsel: | Yeah. I just wanted to point it out as far as -- I guess for the record at this point, we'd ask for a mistrial, but – |
| Trial Court: | I'm going to deny that. |
| Defense Counsel: | Understood. |

Defendant also testified on his behalf that he was falsely accused of molesting Victim. The jury returned verdicts of guilty on the three counts of first-degree statutory sodomy.

## Standard of Review

"Our standard of review in addressing the admission or exclusion of evidence at trial is for abuse of discretion." *State v. Perkins*, 656 S.W.3d 285, 294 (Mo.App. 2022) (internal quotation marks omitted). "The trial court has broad discretion to admit or exclude evidence at trial. That discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* (internal quotation marks omitted). "If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id*. at 295 (internal quotation marks omitted). Although the trial court had the discretion to grant Defendant's mistrial request, "a mistrial is a drastic remedy and should be employed only in the most extraordinary circumstances." *State v. Blurton*, 484 S.W.3d 758, 779 (Mo. banc 2016) (internal quotation marks omitted). "This decision is left to the discretion of the trial court, as it is in the best position to determine whether the incident had a prejudicial effect on the jury." *Id.* (internal quotation marks omitted).

## Discussion

In his first point, Defendant asserts the trial court abused its discretion when it excluded

testimony regarding Grandmother's previous allegations of sexual misconduct against other family members. Defendant argues that Victim possibly heard these allegations and fabricated his testimony to "escape punishment" for the McDonald's incident. Defendant further argues since Victim made statements during his forensic interview, which he later admitted stemmed from his imagination, introduction of Mother's testimony detailing Grandmother's allegations would have been both logically and legally relevant to impeach Victim's credibility at trial and demonstrate that he had a motive to lie.[2]

"Evidence must be logically and legally relevant to be admissible." *State v. Prince*, 534 S.W.3d 813, 817 (Mo. banc 2017). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (internal quotation marks omitted). "Logically relevant evidence is admissible only if it is also legally relevant." *Id*. at 817-18. "Evidence is legally relevant when the probative value of the evidence outweighs unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *State v. Campbell*, 675 S.W.3d 223, 228 (Mo.App. 2023) (internal quotation marks omitted). While "[i]t has long been recognized that defendants in rape or sexual assault cases should be allowed to introduce evidence that the prosecuting witness's story is a fabrication," *see* **Perkins**, 656 S.W.3d at 294 (internal quotation marks omitted), and "[t]he range of external circumstances from which probable bias may be inferred is infinite," "these circumstances should have some clearly apparent force or, should not be too remote." *Id*. at 297 (internal quotation marks omitted).

---

[2] During Victim's forensic interviews, Victim described in detail how he once snuck into Defendant's bedroom, stole [Defendant's] gun, and fired the gun in his parents' kitchen. He said one time his dog picked him up with its nose, put him on its back, brought him to bed, and licked his wounds. When the forensic interviewer reminded Victim to only tell the truth, he claimed he was not pretending. At trial, Victim said he and Mother decided these statements were not real and were just his dreams and active imagination. Mother testified that Victim indicated that the statements he made at the forensic interviews "may have been a dream."

Defendant's offer of proof at trial fails to establish that Mother's testimony regarding Grandmother's prior allegations of sexual misconduct against other family members is logically relevant. Mother testified on cross examination that although it was "possible" that Victim heard Grandmother's allegations, she doubted that Victim heard other family members talking about them and that as far as she knew, Victim did not know anything about Grandmother's allegations. No evidence was adduced at trial indicating Victim knew about Grandmother's allegations. Grandmother's prior allegations through Mother's testimony at best produce mere speculation that Victim not only heard them but used them to fabricate his allegations against Defendant.

Further, Grandmother's allegations were dissimilar to Victim's testimony regarding the charged conduct, as Mother testified that none of Grandmother's allegations concerned a male placing another male's penis in that male's mouth, a person licking another person's anus, or two males each having the other person's penis in their mouth at the same time. Prior allegations of sexual misconduct made against other individuals which do not describe the charged conduct are only remotely connected to the crime charged and do not make it more or less probable that the victim's own testimony regarding the crime charged is credible. *See State v. Gorman*, 468 S.W.3d 428, 432 (Mo.App. 2015) ("[t]here was most certainly no testimony from anyone that a single statement to [Victim] of an undescribed act of molestation by her biological father would have prompted her to describe, in detail, specific acts of sexual abuse by [Defendant] occurring in specific rooms of the house"). Accordingly, the trial court's ruling sustaining the State's objection to the admission of Mother's testimony detailing Grandmother's prior allegations was not "clearly against the logic of the circumstances and . . . so unreasonable as to indicate a lack of careful consideration." *Perkins*, 656 S.W.3d at 294. Point one is denied.

7

In his second point, Defendant asserts the trial court also abused its discretion by failing to order a mistrial when Investigator testified Defendant had refused to take a polygraph test. Defendant argues evidence of his refusal to take a polygraph test creates an improper inference to the jury that the defendant is worried the polygraph will detect his actual guilt.

"The results of a polygraph examination generally are inadmissible in Missouri criminal trials. Even the fact that a defendant took, refused to take, or was willing to take a polygraph is inadmissible." *State v. Collings*, 450 S.W.3d 741, 759 (Mo. banc 2014) (internal quotation marks omitted). Though a defendant's offer or refusal to take a polygraph is inadmissible, "a witness'[s] inadvertent reference to a polygraph does not by itself constitute prejudice that warrants a mistrial." *State v. Stewart*, 265 S.W.3d 309, 316 (Mo.App. 2008) (finding that a witness's confusion by a question which resulted in inadvertent reference to a polygraph, did not constitute prejudice warranting a mistrial).

In this instance, Defendant cannot demonstrate prejudice warranting a mistrial. Defense counsel asked Investigator whether she recalled Mother's texts to her relating a belief the police might not prosecute Defendant because "there wasn't enough evidence." Investigator testified that Mother stated a police investigator mentioned "polygraphs and stuff." Defense counsel persisted in this line of questioning and asked Investigator "after you talked to [the police investigator], it sounds like he was going to kick out a probable cause statement and send it to the prosecutor?" Investigator answered, "Yes, that [Defendant] wouldn't do the polygraph and that there would be a probable cause statement sent to the prosecuting attorney." Investigator's references to a polygraph test were elicited in response to defense counsel's unrelated questions regarding the actions of the police investigator in creating a probable cause statement. It is clear from the record that neither the State nor defense counsel made any reference to Defendant's

refusal to take a polygraph and neither relied on Investigator's testimony to highlight Defendant's culpability for the crime charged. Investigator's testimony in volunteering information regarding Defendant's refusal to take a polygraph test does not result in prejudice and is not an "extraordinary circumstance" warranting the "drastic remedy" of a mistrial. *See Blurton*, 484 S.W.3d at 779; *State v. Weston*, 912 S.W.2d 96, 101 (Mo.App. 1995) (finding no prejudice where police witness inadvertently referred to polygraph test when asked when he got involved in the investigation).

This conclusion is further supported by the fact that Defendant did not request that the trial court instruct the jury to disregard Investigator's testimony about the polygraph test. "Under most circumstances, a trial court acts within its discretion and cures error in the admission of evidence by withdrawing the improper evidence and instructing the jury to disregard it, rather than declaring a mistrial." *State v. Carter*, 71 S.W.3d 267, 271 (Mo.App. 2002) (internal quotation marks omitted). "The fact that a defendant limits his request for relief to that of a mistrial rather than making a request for a less drastic corrective action cannot aid him." *State v. Vickers*, 560 S.W.3d 3, 28 (Mo.App. 2018). "Where a defendant does not ask for an instruction to the jury, we will consider the failure to grant a mistrial an abuse of discretion only if we find that the reference was so prejudicial that its effect could not have been removed by direction to the jury." *Carter*, 71 S.W.3d at 271. Under these circumstances, Defendant has failed to show that an instruction to disregard would have been insufficient to address any potential prejudice that Defendant might have suffered as a result of the testimony. Because the trial court is in the "best position to determine whether the incident had a prejudicial effect on the jury," *Blurton*, 484 S.W.3d at 779, we defer to the trial court's judgment. Point two is denied.

**Decision**

The judgment of the trial court is affirmed.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JACK A. L. GOODMAN, C.J. – CONCURS