In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

STATE OF MISSOURI, ) No. ED108921
 )
 Respondent, ) Appeal from the Circuit Court
 ) of St. Louis County
vs. )
 ) Honorable David Lee Vincent
KAVION L. THOMAS, )
 )
 Appellant. ) FILED: May 11, 2021

 Introduction

 Kavion L. Thomas (“Thomas”) appeals from the trial court’s judgment following a jury

trial convicting him of murder in the second degree and forcible rape. In his sole point on

appeal, Thomas argues the trial court abused its discretion when admitting evidence of an

uncharged prior bad act. Specifically, Thomas contends that evidence that Thomas assaulted

another woman on the night of Victim’s death was not legally relevant and its prejudicial effect

far outweighed its probative value. Although the trial court erred in admitting the challenged

evidence, Thomas was not prejudiced in the outcome of his trial given the other evidence of his

guilt, including substantial blood and other DNA evidence and Thomas’s own testimony that he

went to Victim’s home on the night the offenses were committed. Accordingly, we affirm the

judgment of the trial court.
 Factual and Procedural History

 This case arises out of an incident occurring on the night of April 24, 2012 for which the

State charged Thomas with first-degree murder, first-degree burglary, forcible rape, and forcible

sodomy of Victim in her home. Viewing the evidence in the light most favorable to the verdict,

the following facts were adduced at trial:

 Victim’s son contacted Victim’s sisters when he was unable to reach Victim. The sisters

went to Victim’s home where they found Victim dead with blood around her body. Victim was

sixty-one years old at the time of her death, which was estimated to have occurred in the early

morning hours of April 25. The medical examiner testified that Victim suffered multiple injuries

to her head, chest, arms, and genital region, which showed lacerations and bleeding. Victim’s

cause of death was determined to be a closed head injury.

 Five years later, Thomas was found to be a match for previously unknown DNA-profile

evidence recovered from the crime scene. Based upon the DNA profile, the State charged

Thomas with first-degree murder, first-degree burglary, forcible rape, and forcible sodomy. The

case proceeded to trial on January 6, 2019. The State called as a witness a woman (“Neighbor”)

in her late fifties who lived approximately two miles from Victim in the same four-unit

apartment complex as Thomas. Neighbor testified that she called the police on the same evening

of the incident to report an encounter with Thomas in the building’s shared basement. Neighbor

testified that around 11:00 p.m., she unlocked her door, walked into her apartment, and turned on

the light. At this point, Thomas objected on the basis that Neighbor was about to testify to an

unrelated bad act. Thomas noted that his objection was limited to the prior bad act testimony,

and he did not object to Neighbor testifying that Thomas lived in that building at that time. The

trial court overruled the objection and later allowed Thomas to supplement his objection with

 2
additional constitutional reasoning. Neighbor resumed her testimony. Neighbor stated that the

lights went off in her apartment that night and that she twice went to the basement to flip the

breaker. Neighbor testified that the second time she went to the basement, Thomas grabbed her

from behind and pushed her to the ground. Thomas then told her he was sorry and went upstairs

while she called the police. Officer Richard Daleen (“Officer Daleen”) received Neighbor’s call

while on patrol. Over Thomas’s objection, Officer Daleen testified about speaking with

Neighbor and searching for Thomas but not finding him at the apartment building.

 Detective Michael Neal (“Det. Neal”) testified about his investigation into Victim’s

death. Among the items Det. Neal found in Victim’s home were a used condom in a trashcan,

bloody socks, a bloodstained nightgown, a pair of men’s boxer shorts and an extra-large, white,

tank-top style shirt that was torn, stained, and bloody. Det. Neal also found blood splatters in the

bedroom, bathroom, and on the basement floor. The latent fingerprint examiner did not find any

analyzable fingerprint samples on the items collected from Victim’s house. Det. Neal testified

that he sent some of the items he collected to the crime lab for DNA testing and received

information in 2017 that Thomas was a match for a DNA profile found on the items.

 Katherine Martin (“Martin”), a forensic scientist for the St. Louis County Police

Department Crime Laboratory, testified about the DNA evidence in the case. Martin found

Thomas’s DNA on both a vaginal swab and a rectal swab from Victim. Martin found a mixture

of two individuals matching Thomas and Victim on the fluid collected from the disposed

condom. Martin found Thomas’s DNA on the blood swab taken from the basement floor.

Martin also found Thomas’s DNA on blood from the boxers and shirt collected from Victim’s

bedroom.

 3
 Thomas testified in his own defense. Thomas stated he first met Victim in 2008 or 2009

and had visited Victim at her house probably ten times or more. Thomas said that he and Victim

talked, hung out, drank, smoked marijuana, and partied together, sometimes alone and

sometimes with friends. Thomas testified that he and Victim had sex from time to time. Thomas

denied raping or murdering Victim. Thomas explained that he could remember some of April

2012, but that he could not remember everything about the night of the incident because it was

seven years ago. Thomas testified that sometime later in 2012 he moved to Kentucky where his

mother lived.

 On cross-examination, the State questioned Thomas about Neighbor’s testimony that

Thomas pushed her in the unlit basement earlier on the evening of the charged offenses. Thomas

testified that he was in the basement to check the breakers because his father had told him to

keep watch around the apartment complex because people had been turning off the lights in

order to commit robberies. The State asked Thomas whether watching over the apartment

building was “related to you pushing [Neighbor] to the ground in the basement.” Thomas

explained that it was dark, and he thought someone was turning off the breakers, so he pushed

that person out of the way. Thomas stated he apologized after seeing it was Neighbor.

 After testifying that he left Neighbor at the apartment, the State asked whether Thomas

then went to Victim’s house. Thomas initially replied “I guess so, yes.” Thomas then clarified

that he did not remember whether he went to Victim’s house that night but that “I mean, I knew

her before this, so I could have.” Thomas testified that after he left his apartment, he was

frustrated about what happened with Neighbor and went walking, smoking, and drinking before

staying the night at his uncle’s house. Thomas did not remember whether he was alone or with

friends during the time between leaving his apartment and arriving at his uncle’s house. The

 4
State asked Thomas to name some of the friends who might have been with him and asked

whether he’d spoken to any of them since being charged with Victim’s murder. Over counsel’s

objection, Thomas answered that “we probably went over there and probably traded some weed

for some pain pills or sat there and smoked with her, and that’s probably it.”

 When police officers first showed Thomas a picture of Victim after he was arrested, he

claimed that he did not recognize the person in the photograph. Thomas told police officers that

he “might have, might not have” had sex with Victim. At trial, Thomas testified generally that

he might have had sex with Victim on the night of the charged offenses. However, he stated it

would not have been rape. Thomas testified that he could have left clothes at Victim’s home, but

could not explain the presence of his blood on the shirt or boxer shorts that were found on

Victim’s bed. Thomas was asked about the blood splatters on the wall and whether the blood

splatters related to consensual sex between him and Victim. Thomas answered that if Victim had

been beaten to death, there “[s]hould have been more blood on the wall than that.” When asked

how his blood might have been recovered from the basement floor of Victim’s house, Thomas

testified that he might have gone to the basement and gotten a nosebleed.

 The jury found Thomas not guilty of forcible sodomy and found Thomas guilty of

forcible rape and the lesser-included offense second-degree murder.1 The trial court sentenced

Thomas to life imprisonment for murder in the second degree and life imprisonment for forcible

rape, to be served consecutively. In his motion for new trial, Thomas preserved his objection to

the prior bad acts evidence of the assault on Neighbor. Thomas now appeals.

1
 The State removed the burglary charge prior to trial.
 5
 Point on Appeal

 In his sole point on appeal, Thomas argues the trial court abused its discretion by

admitting evidence that Thomas had assaulted Neighbor on the night of Victim’s death because

the evidence of the uncharged assault was not legally relevant and the prejudicial effect of such

evidence far outweighed its probative value.

 Standard of Review

 “[C]ourts have broad discretion to admit and exclude evidence during a criminal trial, and

we will reverse the [trial] court’s decision ‘only if that discretion was clearly abused.’” State v.

Mosely, 599 S.W.3d 236, 243 (Mo. App. W.D. 2020) (quoting State v. Collings, 450 S.W.3d

741, 765 (Mo. banc 2014)). “A trial court abuses its discretion when its decision is clearly

against the logic of the circumstances and is so unreasonable as to indicate a lack of careful

consideration.” State v. McBenge, 507 S.W.3d 94, 112 (Mo. App. E.D. 2016) (internal quotation

omitted). We review the evidentiary ruling of the trial court “for prejudice, not mere error, and

will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.”

State v. Prince, 534 S.W.3d 813, 818 (Mo. banc 2017) (quoting State v. Forrest, 183 S.W.3d 218,

223–24 (Mo. banc 2006)). “In a criminal case involving improperly admitted evidence, the test

for prejudice is whether the error was outcome-determinative.” State v. Yung, 246 S.W.3d 547,

555 (Mo. App. S.D. 2008) (internal citation omitted).

 Discussion

 The general rule provides that “[e]vidence of other crimes or misconduct is not

admissible for the purpose of showing the defendant’s criminal character or propensity to

commit crimes.” State v. Brown, 457 S.W.3d 772, 786 (Mo. App. E.D. 2014) (citing State v.

Primm, 347 S.W.3d 66, 70 (Mo. banc 2011)); see also McBenge, 507 S.W.3d at 113 (citing State

 6
v. Miller, 372 S.W.3d 455, 473 (Mo. banc 2012)). Missouri courts generally exclude evidence of

uncharged bad acts because:

 [T]he jury may use the evidence of the uncharged crime to infer the defendant has
 a general criminal disposition, a bad character, or a propensity or proclivity to
 commit the type of crime charged, which, in turn, results in the jury basing a
 finding of guilt on the uncharged crime.

Mosely, 599 S.W.3d at 243 (internal quotation omitted).

 “An exception to the general rule exists, however, where the evidence of other crimes or

misconduct is both logically and legally relevant.” Brown, 457 S.W.3d at 786 (internal citation

omitted). “Evidence is logically relevant if it tends to make the existence of a material fact more

or less probable.” State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002) (internal citation

omitted). “Determining whether evidence is logically relevant is a very low-level test that is

easily met.” State v. Banks, 582 S.W.3d 919, 924–25 (Mo. App. E.D. 2019) (quoting Prince,

534 S.W.3d at 819). However, “[l]ogically relevant evidence is admissible only if legally

relevant.” Anderson, 76 S.W.3d at 276. “Legal relevance weighs the probative value of the

evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue

delay, waste of time, or cumulativeness.” Id. (internal citation omitted). A trial court should

therefore exclude logically relevant evidence if its costs outweigh its benefits. Id. Specific to

determining the legal relevance of prior bad acts, exceptions to the general exclusionary rule

include evidence bearing on the following: “(1) motive; (2) identity of the person charged; (3)

intent; (4) absence of mistake or accident; (5) a common scheme or plan; or (6) a complete and

coherent picture of the circumstances and events surrounding the charged crime.” State v.

Coleman, 580 S.W.3d 11, 13 (Mo. App. E.D. 2019) (internal citation omitted); see also Prince,

534 S.W.3d at 818.

 7
 Here, the challenged evidence consisted of Thomas pushing Neighbor, a woman, in the

darkened apartment basement on the night of Victim’s death. As Thomas acknowledges, the

evidence meets the low-level test for logical relevance because Neighbor’s testimony places

Thomas earlier in the evening two miles from Victim’s house on the same night Victim died.

See Anderson, 76 S.W.3d at 276; Banks, 582 S.W.3d at 924–25 (quoting Prince, 534 S.W.3d at

819).

 As noted above, logical relevance is only the first step of our analysis. We must now

consider if Neighbor’s testimony was legally relevant to the charges for which Thomas was tried.

When reviewing the entirety and context of Neighbor’s testimony, we find the legal relevance of

such evidence lacking. We are persuaded that the logical relevance of Thomas’s proximity to the

scene of the crime was plainly and substantially outweighed by the potential prejudice of

Neighbor testifying about Thomas’s uncharged assault on her. See Anderson, 76 S.W.3d at 276.

In balancing the probative value of evidence against its potential prejudicial effect on the jury,

“the trial court must carefully consider that ‘the inevitable tendency of such evidence is to raise a

legally spurious presumption of guilt in the minds of the jurors.’” State v. Nelson, 178 S.W.3d

638, 644 (Mo. App. E.D. 2005) (quoting State v. Clover, 924 S.W.2d 853, 856 (Mo. banc 1996)).

Thomas argues, and we agree, that the evidence pertaining to Neighbor presented the jury with a

heightened potential for prejudice because of the allegations that Thomas assaulted a woman in

her late fifties in the darkened basement of her apartment building on the same night that Thomas

was charged with raping, sodomizing, and murdering another woman of similar age in her home.

We are persuaded that the risk of the jury using Neighbor’s testimony as improper propensity

evidence was high. See State v. Brown, 596 S.W.3d 193, 210 (Mo. App. W.D. 2020) (noting

having the victim testify about the prior bad act increases the danger of unfair prejudice as

 8
opposed to introducing the evidence by way of a short, dispassionate statement); see also State v.

Alexander, 875 S.W.2d 924, 930 (Mo. App. S.D. 1994) (per curiam) (internal quotation omitted)

(“Trials of charges for which there is a human abhorrence should be conducted with scrupulous

fairness to avoid adding other prejudices to that which the charge itself produces.”).

 Here, the State had ample opportunity to show Thomas’s location at the apartment

building shortly before the murder by presenting Neighbor’s testimony that she saw Thomas at

the apartment without eliciting detailed testimony about the assault. Such testimony would have

met the State’s legitimate purpose of introducing evidence showing Thomas’s proximity to

Victim’s home where the offense occurred hours later without raising the prejudicial aspect of

the uncharged assault. See Mosely, 599 S.W.3d at 244 (internal quotation omitted) (noting the

State should not be “unduly limited in the manner in which it satisfies its quantum of proof”

given its evidentiary burden); but see State v. Wood, 580 S.W.3d 566, 592 (Mo. banc 2019)

(Stith, J., dissenting) (noting prejudice resulting from the introduction of minimally probative but

highly prejudicial gun evidence could have been mitigated by the State having simply introduced

evidence that the defendant owned numerous guns and handed over the smallest, supported by

one or two pictures, without going into prejudicial detail about all of the guns he owned, with

over twenty pictures, that were unconnected to the charged offense). Indeed, Thomas proposed

just such a limitation, which the trial court erroneously rejected.

 The State reasons that the Neighbor’s uncharged assault testimony came within an

exception to the general exclusionary rule. See Coleman, 580 S.W.3d at 13. In particular, the

State suggests that evidence of the events occurring prior to the incident at Victim’s home would

“present the jury a complete and coherent picture of the charged crimes.” Mosely, 599 S.W.3d at

243 (internal quotation omitted); see also Coleman, 580 S.W.3d at 13. We find the State’s

 9
posture unavailing. We are acutely aware that “tension necessarily exists between excluding

evidence of uncharged crimes and admitting evidence to show the complete and coherent picture

of the crime at issue.” State v. Davis, 226 S.W.3d 167, 170 (Mo. App. W.D. 2007) (quoting

State v. Morrow, 968 S.W.2d 100, 108 (Mo. banc 1998)). But we also are reminded that a trial

court “must take special care in striking this balance, especially when the evidence of the

uncharged crimes is remote in time or nature from the crime at issue.” Id. Here, in contrast to

cases in which the defendant committed a prior bad act against the same victim or much closer to

the scene of the crime, we are not persuaded that the details of the pushing incident somehow

would provide the jury a more complete picture of the offenses for which Thomas was charged.

The challenged testimony involved an unrelated incident occurring earlier in the evening

between Thomas and an unrelated individual in the apartment complex where Thomas lived

about two miles from the crime scene. See, e.g., State v. Blakey, 203 S.W.3d 806, 814 (Mo.

App. S.D. 2006) (quoting State v. Pennington, 24 S.W.3d 185, 191 (Mo. App. W.D. 2000))

(finding the defendant’s prior physical abuse of the victim’s mother did not come within the

complete-picture exception because the misconduct was “not part of the circumstances of the

offense charged or part of the sequence of events surrounding the offense charged”). We again

note that sustaining Thomas’s objection to Neighbor’s assault testimony would not have impeded

the State from proving Thomas’s identity and location through Neighbor’s testimony without

going into the details of the objectionable prior bad act evidence.

 Given the facts before us, we are persuaded that the potential detriment of Neighbor’s

testimony of Thomas’s unrelated prior assault far outweighed the benefit of such testimony, and

the trial court erred in admitting the evidence. See Anderson, 76 S.W.3d at 276; McBenge, 507

S.W.3d at 113 (citing Miller, 372 S.W.3d at 473); Brown, 457 S.W.3d at 786 (citing Primm, 347

 10
S.W.3d at 70). However, as noted above, paramount to a reversal of a judgment on evidentiary

grounds is a finding prejudice. Prince, 534 S.W.3d at 818 (citing Forrest, 183 S.W.3d at 223–

24). Even though the trial court erred in admitting Neighbor’s testimony about the uncharged

assault, we will not reverse the trial court’s judgment unless such evidence prejudiced Thomas

by depriving him of a fair trial. Id.; see Brown, 457 S.W.3d at 789 (internal citation omitted).

 As we undertake the prejudice analysis, we review the entire record, which here contains

multiple pieces of evidence linking Thomas’s blood and semen to the crime scene. Such

evidence, in combination with Thomas’s own testimony, demonstrates the absence of any

outcome-determinative prejudice on the jury’s finding of guilt for the charged offenses of rape

and murder. See Blakey, 203 S.W.3d at 816 (internal quotation omitted) (“Error which in a close

case might call for a reversal may be disregarded as harmless when the evidence of guilt is

strong.”); Wood, 580 S.W.3d at 575 (finding overwhelming admissible evidence of guilt negates

any reasonable probability the outcome would have been different even if the objectionable

evidence had been excluded). Specifically, the jury was presented with evidence in Thomas’s

testimony that he went to Victim’s home on the night of the charged offenses. Thomas’s DNA

was found in the discarded condom found in Victim’s trash as well as on the vaginal and rectal

swabs. Although Thomas initially denied recognizing Victim’s photograph at the police station,

Thomas consistently testified that he had sex with Victim generally and might have had sex with

Victim that night. Further, DNA evidence of Thomas’s blood was on boxer shorts and a bloody,

torn shirt found on Victim’s bed at the crime scene. While Thomas testified he might have left

clothes at Victim’s home, he had no explanation for the blood on the clothes. Thomas’s only

comment about his blood splatters on the basement floor was that he might have gone to

Victim’s basement and had a nosebleed.

 11
 The jury heard significant admissible evidence and testimony subject to its own

credibility determinations. “A finding of outcome-determinative prejudice expresses a judicial

conclusion that the erroneously admitted evidence so influenced the jury that, when considered

with and balanced against all evidence properly admitted, there is a reasonable probability that

the jury would have acquitted but for the erroneously admitted evidence.” Yung, 246 S.W.3d at

555 (quoting State v. Black, 50 S.W.3d 778, 786 (Mo. banc 2001)). Given the evidence of

Thomas’s DNA recovered from the bloody shirt, boxers, basement blood splatter, condom,

vaginal and rectal swabs, paired with Thomas’s admission that he went to Victim’s home after

leaving the apartment, we hold that Thomas has not carried his burden of showing that the

admission of Neighbor’s testimony introduced such prejudice that there is a reasonable

probability the jury would have acquitted him had the trial court excluded that portion of

Neighbor’s testimony regarding the assault. Thomas has not demonstrated the presence of error

so prejudicial that it deprived him of a fair trial. See Wood, 580 S.W.3d at 575; Prince, 534

S.W.3d at 818 (quoting Forrest, 183 S.W.3d at 223–24). Thomas’s sole point on appeal is

denied.

 Conclusion

 We affirm the judgment of the trial court.

 _______________________________
 KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.

 12