

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

STATE OF MISSOURI,       )       No. ED112290

                      )

          Respondent,        )       Appeal from the Circuit Court

                      )       of Washington County

vs.                           )       Cause No. 21WA-CR00751-01

                      )

MARK J. MATLOCK,        )       Honorable Wendy L. Wexler Horn

                      )

          Appellant.         )       FILED: April 29, 2025

### Opinion

Mark J. Matlock (Matlock) appeals from the trial court's judgment following jury convictions on voluntary manslaughter, armed criminal action, and unlawful use of a weapon for shooting Victim. Matlock raises two points on appeal. Point One argues the trial court abused its discretion in admitting double-hearsay testimony from Victim's Aunt about Victim's Grandmother purportedly threatening Victim, which Matlock argues impaired his justification defense that he shot Victim to protect Grandmother.[1] Point Two asserts the trial court abused its discretion in excluding testimony purporting to demonstrate Victim's violent and turbulent nature, which Matlock contends prejudiced his ability to prove Victim was the initial aggressor during the deadly encounter. We deny Point One because Matlock fails to show how the admission of the double-hearsay testimony resulted in outcome-determinative prejudice. We

---

[1] Names are redacted pursuant to § 509.520, RSMo (Cum. Supp. 2023).

deny Point Two because Matlock did not preserve the issue for appeal. Accordingly, we affirm the trial court's judgment.

Background

The following evidence is presented in the light most favorable to the verdict:[2]

The State charged Matlock with first-degree murder, armed criminal action, and unlawful use of a weapon arising out of an incident on December 29, 2021, in which Matlock shot and killed Victim following an argument between Victim, Grandmother, and Matlock.

Victim had moved in with his Grandmother and his Grandmother's long-time domestic partner, Matlock, after the birth of Victim's Daughter in 2019. Grandmother helped take care of Daughter despite frequent friction between Victim, Matlock, and herself. On December 29, 2021, Victim and Grandmother got into an argument when he slept in late and refused to help out around the house as requested. Grandmother asked Victim to leave, then retreated to her bedroom and closed the door.

Matlock approached Victim and also asked him to leave. Instead of doing as requested, Victim grabbed a machinist hammer and began to beat on Grandmother's bedroom door. Matlock pulled out a gun and shot Victim four times. One of Matlock's first shots left Victim "paralyzed" from the middle of his chest downward. While Victim was on the ground, Matlock shot him in the right side of his head and killed him. Grandmother and Matlock did not call the police. Upon hearing the news of Victim's death, other members of Victim's family arrived at the scene. Victim's Brother chased Matlock away from the home and, once the police arrived, Matlock turned himself in.

---

[2] *State v. Scott*, 676 S.W.3d 336, 339 (Mo. App. E.D. 2023) (internal citation omitted).

Following Matlock's arrest and charges, the case proceeded to trial, where Matlock asserted the justification of defense of another.[3] Matlock testified in his own defense that he shot Victim to protect Grandmother because he feared Victim was threatening Grandmother's life. Grandmother also testified in Matlock's defense. At trial, Matlock unsuccessfully attempted to elicit testimony from Grandmother about an incident of alleged violence by Victim against Victim's Girlfriend during Thanksgiving of 2021. Initially, Defense Counsel asked Grandmother whether that Thanksgiving was "a pleasant time," and the State objected on relevance grounds. Defense Counsel informed the trial court that the sought-after testimony would go to Victim's violent nature, and the trial court allowed Defense Counsel to proceed.

Defense Counsel:    So when you arrived at the home in Union who all was there?

Grandmother:    [G]irlfriend and his [G]irlfriend's son and his [D]aughter.

Defense Counsel:    Okay. And you mentioned that wasn't a good time, and why is that?

Grandmother:    [Victim and Girlfriend] were fighting.

Defense Counsel:    Okay. How did you know they were fighting?

Grandmother:    They were fussing and arguing and there was bruises on both of them.

The State renewed its relevance objection, arguing that Grandmother did not know where the bruises came from and that the testimony pertaining to "fussing and arguing" did not show Victim's violent nature. The trial court allowed Defense Counsel to ask more specific questions. Defense Counsel asked Grandmother: "And you had mentioned that there had been some fighting between [Victim] and [Girlfriend]; is that correct?" The State again objected on the grounds that the question lacked relevance and was also argumentative. Defense Counsel

---

[3] Matlock did not present a claim of self-defense to the jury.

3

explained to the trial court that he was attempting to ask Grandmother about a fight she observed. The trial court ruled that Defense Counsel could ask if Grandmother observed any other form of "fussing and arguing" but was limited to her response. When Defense Counsel asked Grandmother whether she observed any other form of "fussing and arguing," Grandmother said no. Defense Counsel did not ask her any further questions about Thanksgiving of 2021.

Victim's Aunt testified on behalf of the State. The State elicited testimony from Aunt about what Victim told her about an argument he had with Grandmother four days before the offense. Specifically, Aunt testified she drove Victim to Grandmother and Matlock's home so he could retrieve some things. Aunt said she waited in the car, and Victim returned after only a few minutes clearly upset. Aunt was about to testify about what Victim told her when Matlock objected on hearsay grounds. The State countered the testimony would be admissible under three hearsay exceptions: (1) dying declaration, (2) forfeiture by wrongdoing and (3) state of mind. The trial court overruled Matlock's objection. The State's examination of Aunt continued:

State:   Okay. So when [Victim] exited the house and then approached you, what did he tell you?

Aunt:   [Victim] got back in the car. I asked him what was going on because he was cussing and raving. He said, "The bitch won't let me take my kid." And I said, "Well what do you mean?" And he said, "[Grandmother]'s been trying to get me to sign over custody of [Daughter], and I told her it would be over my dead body."

Matlock renewed his objection on hearsay grounds, which the trial court again overruled. Aunt proceeded to testify that Victim told her that Grandmother told him "to sign over custody of [Daughter], and [Victim] said it would be over his dead body, and [Grandmother] told him that that could be arranged." Aunt added that Victim said Grandmother had threatened him

4

before and that he thought Grandmother was going to kill him in his sleep. The State later mentioned Aunt's testimony in closing argument.

The State called more of Victim's family to prove Matlock had a gun that he planned to use to kill Victim. Specifically, both Victim's Cousin and Victim's other aunt (Aunt-by-Blood) asked Matlock why he had a gun, and Matlock responded he was going to kill Victim. Aunt-by-Blood observed Matlock carrying a gun two weeks before Victim's death. Victim's Brother also testified that Matlock had a gun one or two months before Victim's death. Furthermore, Brother explained that Matlock had told him he would use the gun to kill Victim if Victim came back to the house and started an argument again.

The trial court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, involuntary manslaughter, armed criminal action, unlawful use of a weapon, and defense-of-another. Matlock's closing argument primarily focused on his claim that he was defending Grandmother. Whereas the State sought to prove deliberation for first-degree murder based either on Matlock having a gun to shoot Victim with or on Matlock shooting Victim multiple times, even after Victim was on the ground. At the close of trial, the jury found Matlock guilty of the lesser offense of voluntary manslaughter as well as armed criminal action and unlawful use of a weapon. The trial court sentenced Matlock to a total of sixty years in prison. Matlock moved for a new trial, alleging the same two claims raised in this appeal, which was denied. Matlock now appeals.

<u>Standard of Review</u>

This Court uses the abuse of discretion standard when evaluating challenges to the admission of evidence. *State v. Redmond*, 686 S.W.3d 333, 340 (Mo. App. E.D. 2024) (citing *State v. Forrest*, 183 S.W.3d 218, 223) (Mo. banc 2006)). "A trial court abuses its discretion when its decision is clearly against the logic of the circumstance and is so unreasonable as to

5

indicate a lack of careful consideration." *Id.* (internal citation omitted). "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Brandolese*, 601 S.W.3d 519, 533 (Mo. banc. 2020) (internal quotation omitted).

This Court will only reverse the trial court's evidentiary ruling if the error was so prejudicial that it deprived the defendant of a fair trial. *Id.* at 533-34 (internal quotation omitted). "In a criminal case, involving improperly admitted evidence, the test for prejudice is whether the error was outcome-determinative." *Redmond*, 686 S.W.3d at 340 (internal quotation omitted). "A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all evidence properly admitted, there is a reasonable probability that the jury would have acquitted but for the erroneously admitted evidence." *State v. King*, 705 S.W.3d 650, 660 (Mo. App. E.D. 2024) (quoting *State v. Black*, 50 S.W.3d 778, 786 (Mo. banc 2001)) (internal citation omitted).

"Under certain circumstances, we may review unpreserved errors under our plain error standard of review." *State v. Townsend*, 649 S.W.3d 72, 78 (Mo. App. E.D. 2022) (internal citations omitted). Rule 30.20[4] states in relevant part that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id.* (internal citations omitted). For this Court to exercise this discretion, the appellant must request plain error review or present an argument that manifest injustice occurred. *State v. Shepard*, 662 S.W.3d 761, 772 (Mo. App. E.D. 2023) (quoting *Petersen v. State*, 658 S.W.3d 512, 517 (Mo. banc 2022)).

---

[4] All Rule references are to Mo. R. Crim. P. (2025), unless otherwise noted.

6

**I.      The trial court's admission of Aunt's testimony was not prejudicial error**

In his first point, Matlock argues the trial court erred in admitting two statements from Aunt's testimony over his objections. Specifically, Aunt testified about what Victim told her about an argument he had with Grandmother four days before his death. Aunt said that Victim told Grandmother he would give up custody of his Daughter to her "over [his] dead body," to which Grandmother responded: "that could be arranged." On appeal, Matlock argues the trial court erred in admitting this testimony because it was inadmissible double hearsay that prejudiced Matlock's defense-of-another claim. We find the trial court erred in admitting the testimony inasmuch as it did not fit any recognized hearsay exception, but we do not reverse for an abuse of discretion because the testimony caused no outcome-determinative prejudice. The testimony did not prejudice Matlock's defense-of-another claim because it was merely cumulative to other properly admitted evidence.

A.      <u>The trial court erred in admitting the challenged testimony because no hearsay exception applies</u>

"Hearsay is an out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *State v. Johnson*, 690 S.W.3d 928, 931 (Mo. App. E.D. 2024) (quoting *State v. Taylor*, 298 S.W.3d 482, 492 (Mo. banc 2009)). Hearsay should not be admitted over an objection unless it falls under a recognized exception or is used for a non-hearsay purpose. *Id.* (citing *Saint Louis Univ. v. Geary*, 321 S.W.3d 282, 291 (Mo. banc 2009)). If a hearsay statement contains another hearsay statement, otherwise known as double hearsay, then an exception must apply to both statements for them to be admissible. *State v. Edmond*, 675 S.W.3d 235, 244 (Mo. App. E.D. 2023) (quoting *State v. Sutherland*, 939 S.W.2d 373, 377 (Mo. banc 1997)).

The Confrontation Clause of the Sixth Amendment of our federal Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. CONST. amend. VI. The Missouri Constitution also provides that, "in criminal prosecutions the accused shall have the right to . . . meet the witnesses against him face to face." MO. CONST. art. I, § 18(a). "Under the Confrontation Clause, a trial court should exclude testimonial hearsay statements of a witness who does not appear at trial because it denies the accused an opportunity to confront the witness." *State v. Scott*, 676 S.W.3d 336, 341 (Mo. App. E.D. 2023) (citing *State v. Hosier*, 454 S.W.3d 883, 896 (Mo. banc 2015)). Hearsay statements also present other concerns, as they are not made under oath, nor are jurors able to assess the declarant's demeanor at the time the statement is made. *State v. Huckleberry*, 544 S.W.3d 259, 261 (Mo. App. S.D. 2017) (quoting *State v. Taylor*, 298 S.W.3d 482, 492 (Mo. banc 2009)).

Here, the parties agree Aunt's statements were double-hearsay because Aunt was reporting what Victim told her about (1) what he told Grandmother as well as (2) what Grandmother told him. *See Edmond*, 675 S.W.3d at 244. Therefore, to be admissible, the statement "over my dead body" requires an exception, and the statement "that could be arranged" requires an additional exception. Preliminarily, we note the State concedes on appeal that the challenged testimony was not admissible under either the dying-declaration exception or the forfeiture-by-wrongdoing exception, and therefore we need not review them.[5] We hold that

---

[5] For the sake of thoroughness, we note the parties are correct that the statements were not admissible as dying declarations. To admit hearsay under the dying-declaration exception, the declarant must make the statement while thinking death is imminent with no chance of recovery. *Johnson*, 690 S.W.3d at 931 (internal citation omitted). Here, neither statement in Aunt's retelling of the conversation between Victim and Grandmother falls under the dying-declaration exception because the proponent of the exception, the State, has not shown Victim believed his death was imminent. *See id.* Victim was not suffering from any injuries following his conversation with Grandmother, and he did not die until four days later. Thus, neither statement should have been admitted under the dying-declaration exception. *See id.*

neither the Victim's nor Grandmother's statements were admissible under the state-of-mind exception.

A trial court may properly admit hearsay statements that speak to the victim's or **defendant's** state of mind "in limited situations when they are relevant and the relevancy outweighs their prejudicial effect." *State v. Rios*, 234 S.W.3d 412, 422 (Mo. App. W.D. 2007); *State v. Wiley*, 337 S.W.3d 41, 44 (Mo. App. S.D. 2011) (quoting *State v. Bell*, 950 S.W.2d 482 (Mo. banc 1997)); *see also Townsend*, 649 S.W.3d at 79 (Mo. App. E.D. 2022) (internal citations omitted). Historically, Missouri courts have applied the state-of-mind exception in two scenarios: (1) to prove the victim's or defendant's state of mind placed at issue by claims of self-defense, suicide, or accidental death; or (2) to prove an act that the declarant planned to do in the immediate future was actually performed. *Rios*, 234 S.W.3d at 423; *see also Townsend*, 649 S.W.3d at 79 (internal citation omitted). The State, without citing to any legal authority, suggests we extend the state-of-mind exception to a defense-of-another claim due to the similarities between self-defense and defense-of-another claims as justification defenses. While we will affirm a trial court's evidentiary ruling for any reason supported by the evidence, we decline the State's invitation to reinterpret the state-of-mind exception here because, as explained below, the State fails to meet the threshold test of relevance.[6] *Johnson*, 690 S.W.3d at 931.

---

We also briefly explain why Aunt's hearsay statements were not admissible under the forfeiture-by-wrongdoing exception. The Missouri legislature codified the forfeiture-by-wrongdoing exception in § 491.016, RSMo (Cum. Supp. 2021). To admit hearsay under this statute, the State needs to satisfy four requirements, including that "[t]he defendant engaged in or acquiesced to wrongdoing with **the purpose of causing the unavailability of the witness**." § 491.016.1 (emphasis added). This exception thus requires the State to show, among other things, that the defendant performed the wrongful act "**with the intent to prevent the witness from testifying**." *State v. Fields*, 675 S.W.3d 562, 568 (Mo. App. E.D. 2023) (quoting *State v. McLaughlin*, 265 S.W.3d 257, 272 (Mo. banc 2008)) (emphasis in original). Here, the forfeiture-by-wrongdoing exception does not apply to either statement because no evidence suggests Matlock killed Victim with the intent to prevent him from testifying at trial. *See id.*

[6] Even if Grandmother's alleged threat to Victim caused Victim to fear her, and that fear of Grandmother were somehow relevant to the overall context of the incident, the state-of-mind exception would not apply because "state of mind statements are **only** admissible in cases involving claims of self-defense, suicide or accidental death," none of which are at issue here. *See State v. Martinelli*, 972 S.W.2d 424, 435 (Mo. App. E.D. 1998) (internal citation omitted) (emphasis added). We note Matlock did not raise the issue of self-defense at trial but instead only argued

9

Ultimately, a trial court applies the rules of evidence "to ensure the [jury] will have all relevant, reliable, and probative evidence on the issues in dispute." *Townsend*, 649 S.W.3d at 79 (citing *State v. Waller*, 816 S.W.2d 212, 215 (Mo. banc 1991)).

To be admissible, regardless of whether a hearsay exception applies, the evidence must be logically and legally relevant. *State v. Fisher*, 705 S.W.3d 664, 681 (Mo. App. E.D. 2024) (citing *State v. Prince*, 534 S.W.3d 813, 817 (Mo. banc 2017)). Logical relevance requires the evidence tend to make the existence of a fact more or less probable. *Id.* (internal quotation omitted). If a trial court finds the evidence logically relevant, then the court determines whether it is legally relevant. *Id.* (internal quotation omitted). A trial court will exclude logically relevant evidence if the prejudice of admitting it outweighs its probative value. *Id.* (internal quotation omitted). Prejudice includes "**confusion of the issues**, **misleading the jury**, undue delay, waste of time, or **cumulativeness.**" *Id.* (internal quotations omitted) (emphases added).

Aunt's testimony containing double hearsay presents a particular challenge, as the State must prove the relevance of both Victim's and Grandmother's state of mind for admissibility. The State does not meet this challenge. Both Victim's and Grandmother's statement are not logically relevant as neither statement makes it more likely or not that Matlock shot Victim to defend Grandmother. Even if these statements were logically relevant, we find them legally irrelevant because of their likelihood to confuse the issues and mislead the jury. Also, as explained below, these statements were cumulative of other properly admitted evidence.

Victim's statement "over my dead body" only provides context to Grandmother's statement "that could be arranged." Alone, Victim's statement would not help the jury determine

---

defense of another, namely, Grandmother. Thus, the State cannot use a non-existent defense to get the double-hearsay testimony admitted under this exception. *See State v. Salmon*, 563 S.W.3d 725, 739 (Mo. App. E.D. 2018) (internal citation omitted) ("This [C]ourt is bound by the record on appeal and cannot speculate as to what evidence may have been presented below which is not reflected by the record.").

10

whether Matlock acted in lawful defense of Grandmother. *See id.* (internal quotations omitted). Victim's strong desire to keep custody of Daughter against Grandmother's wishes does not help a juror decide whether Matlock intended to kill Victim.

Regarding Grandmother's statement, it is unclear how an alleged threat by Grandmother could impute a motive to Matlock who presumably was not present during the conversation between Victim and Grandmother. Inasmuch as Grandmother's statement shows she threatened Victim, she was not the defendant on trial, thus her threats are irrelevant to any analysis of Matlock's defense of Grandmother, including the question of whether Matlock or Victim was the initial aggressor in the encounter, which is central to the viability of Matlock's justification defense. *See State v. O'Keefe*, 681 S.W.3d 615, 627 (Mo. App. E.D. 2023) (providing the elements to a defense-of-another claim including who was the initial aggressor) (internal citations omitted). No party has suggested that Grandmother was the initial aggressor, nor explained, even if she was, how that would impact the analysis of Matlock's defense-of-another claim. Thus, the trial court erred in admitting Aunt's double-hearsay testimony. *See Rios*, 243 S.W.3d at 425.

B.     The trial court's erroneous admission of Aunt's testimony did not prejudice Matlock

Although the trial court erred in admitting Aunt's hearsay statements, we affirm the trial court's judgment as Matlock cannot demonstrate outcome-determinative prejudice resulted from the erroneous admission. *See Redmond*, 686 S.W.3d at 340 (internal citation omitted). Of particular import here is that "[a] complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence." *Brandolese*, 601 S.W.3d at 536 (internal quotation omitted); *see also State v. Oshia*, 700 S.W.3d 605, 613 (Mo. App. E.D.

11

2024) (internal quotations omitted). "Cumulative evidence is additional evidence that reiterates the same point." *Brandolese*, 601 S.W.3d at 536 (internal quotation omitted).

The trial court's error in admitting Aunt's double-hearsay testimony was not prejudicial because it was cumulative to other related testimony that was not challenged. *See Oshia*, 700 S.W.3d at 613 (internal quotations omitted). The State at trial sought to admit the challenged testimony in order to impute Grandmother's threat against Victim ***to Matlock***—specifically, to show Matlock planned to make good on that threat by murdering Victim. To the extent Grandmother's threat could ever be attributed to Matlock, it was merely cumulative to other evidence from Victim's family members, who all testified, with no defense objection, that Matlock had a gun he was planning to use to kill Victim. Ultimately, the jury rejected this as evidence of deliberation and instead convicted Matlock on the lesser offense of voluntary manslaughter based on the presence of sudden passion arising from adequate cause during the altercation. *See State v. Edwards*, 530 S.W.3d 593, 605 (Mo. App. E.D. 2017) (internal citation omitted). Thus, we cannot say that the challenged testimony prejudiced Matlock's defense to the charge of first-degree murder. *See id.* (internal citation omitted).

In addition, Matlock argues the improperly admitted testimony prejudiced his defense-of-another claim because the testimony permitted the jury to infer Matlock was the initial aggressor. We fail to see any prejudice because the jury was presented with other evidence from which to disbelieve that justification, including that Grandmother was on the other side of a closed door when Matlock alleged he shot Victim out of reasonable fear for Grandmother's life. *See O'Keefe*, 681 S.W.3d at 627 ("A person may . . . use physical force upon another person when and to the extent he or she ***reasonably believes*** such force to be necessary to defend . . . a third person from what he or she ***reasonably believes*** to be the use or imminent use of unlawful force

12

by such other person.") (internal quotations omitted) (emphases added). Indeed, the jury heard evidence that Matlock continued shooting Victim even after he was lying on the ground and paralyzed, killing him. Grandmother's four-day-old threat was not determinative of whether Matlock killed Victim out of sudden passion, which is what the jury found. Thus, we find the trial court's erroneous admission of inadmissible hearsay evidence of dubious relevance did not prejudice the outcome of Matlock's trial. *See Edmond*, 675 S.W.3d at 245 (internal citation omitted). Point One is denied.

## II.     The trial court did not abuse its discretion in excluding Grandmother's testimony about Thanksgiving 2021 because Matlock did not preserve the issue for appellate review

In his second point relied on, Matlock argues the trial court erred in excluding testimony from Grandmother about a fight she allegedly observed between Victim and Girlfriend because the exclusion prohibited the jury from understanding Victim's violent and turbulent nature. We deny the point because it is unpreserved for appellate review, as Matlock failed to provide an offer of proof as to what Grandmother's testimony would have been. Consequently, there is not a sufficient record on which we may review the claim for plain error.

To preserve a claim that evidence was improperly excluded, "the proponent must attempt to present the excluded evidence at trial, and if it remains excluded, make a sufficient offer of proof." *State v. Bryant*, 686 S.W.3d 324, 328 (Mo. App. E.D. 2024) (citing *State v. Hunt*, 451 S.W.3d 251, 263) (Mo. banc 2014)). "An offer of proof is required to demonstrate to the [trial court] what the rejected evidence would show, educating the [trial court] as to the admissibility of the proffered testimony, and allowing the [trial court] to consider the testimony in context." *Id.* (quoting *State v. Michaud*, 600 S.W.3d 757, 761–62 (Mo. banc 2019)) (internal quotation omitted). "Offers of proof must show what the evidence will be, the purpose and object of the evidence, and each fact essential to establishing admissibility." *Id.* (internal quotations omitted).

13

A proponent may make the offer of proof by placing the witness upon the stand and questioning them outside the presence of the jury or, alternatively, by providing to the trial court a summary of the proposed testimony. *Brock v. Shaikh*, 689 S.W.3d 792, 797 n. 3 (Mo. App. E.D. 2024) (quoting *State v. Townsend*, 737 S.W.2d 191, 192 (Mo. banc 1987)). Missouri courts will not speculate on what the evidence would have been. *See State v. Salmon*, 563 S.W.3d 725, 739 (Mo. App. E.D. 2018) (internal citation omitted). Failure to make an offer of proof preserves nothing for review and warrants dismissing the point. *Bryant*, 686 S.W.3d at 328; *Michaud*, 600 S.W.3d at 762 (internal quotations omitted).

Here, Defense Counsel asked Grandmother about the fight she witnessed between Victim and Girlfriend during Thanksgiving of 2021. Grandmother told the jury she knew Victim and Girlfriend were fighting because "[t]hey were fussing and arguing and there was bruises on both of them." Over the State's objection on relevance grounds, the trial court permitted Defense Counsel to attempt to elicit evidence as to Victim's violent nature by asking Grandmother if she saw any "other form of fussing or arguing," and Grandmother answered she did not. Defense Counsel did not ask any further questions on the matter.

Matlock maintains the trial court's limitation on his questioning of Grandmother functioned as an exclusion of admissible evidence. Assuming arguendo the trial court's ruling prevented Matlock from eliciting admissible evidence, Point Two was not preserved because Matlock did not present an offer proof as to what the excluded testimony would have been and what it would have shown. *See Bryant*, 686 S.W.3d at 328 (quoting *Michaud*, 600 S.W.3d at 761–62). Matlock did not request to make an offer of proof by further questioning Grandmother outside the jury's hearing, nor did Matlock adequately summarize what he expected from Grandmother's testimony. *See id.* (internal quotation omitted). Moreover, although Matlock

14

explained to the trial court the general purpose for why the evidence should be admitted—to show Victim's violent and turbulent nature—Matlock failed to tell the trial court precisely how the testimony would have been relevant to the arguments at trial. This is especially problematic because Matlock did not mention whether the evidence was intended to show Victim was the initial aggressor as relevant to Matlock's defense-of-another claim, nor did he specify whether he intended to elicit evidence about a particular act of violence by Victim or Victim's reputation for having a violent and turbulent nature, which are analyzed under different legal frameworks. *See Brandolese,* 601 S.W.3d at 534 (internal quotation omitted). Therefore, absent an offer of proof as to the purported wrongly excluded evidence, Matlock's second point was not preserved. *See Bryant*, 686 S.W.3d at 328 (citing *Hunt*, 451 S.W.3d at 263).

"Under certain circumstances, we may exercise discretion to review unpreserved errors for plain error." *Townsend*, 649 S.W.3d at 78 (internal citations omitted). However, "[t]he plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *Brandolese*, 601 S.W.3d at 526 (internal quotation omitted). For this Court to exercise this discretion, the appellant must request plain error review or present an argument that manifest injustice occurred. *Shepard*, 662 S.W.3d at 772 (quoting *Petersen*, 658 S.W.3d at 517). We decline to review Point Two under the plain-error standard because Matlock failed to do either. Matlock did not request that if we find the claim unpreserved, we should review it for plain error. Also, Matlock did not argue manifest injustice as the absence of an offer of proof left the trial court without a sufficient record to make an informed ruling, and it would require us to improperly speculate on what the evidence would have been. *See Salmon*, 563 S.W.3d at 739 (internal citation omitted). Point Two is denied.

15

## Conclusion

The judgment of the trial court is affirmed.

Rebeca Navarro-McKelvey, J.
_____
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J. and
Virginia W. Lay, J., concur.